Well, the next case, Aurelio Ray Cagno v. NJ State Prison Administrator. Mr. Yamato. Good morning, Your Honor. I'm here with Mr. Stephen A. Yamato, Deputy Attorney General, representing the appellants in this case, the New Jersey State Administrator of the prison, and New Jersey Attorney General. With your court's indulgence, I would like to start with ground three, the confrontation issue. Did you say you reserved time for rebuttal? Oh, I'm sorry. I reserved five minutes for rebuttal, Your Honor. I'd like to start with ground three, the confrontation issue, that it was improper under AEDPA standards for the district court to grant habeas on this ground. Petitioners claim the state courts was grounded as a purported Crawford violation, that Lombardino's refusal to testify and his gestures and communications to him from the first trial proceeding was testimonial hearsay and not subject to cross-examination. But that's not what the district court below granted habeas on. Rather, the judge strictly focused on Lombardino's refusal to testify and found that it came within the parameters of a Namit Douglas violation. Why shouldn't we accept the New Jersey Supreme Court's take on this whole thing? Now, the New Jersey Supreme Court said in its decision that the testimony, which is what you're referring to now, of Kodak and Rivera Estrada indicating that Lombardino did not answer questions at the first proceeding is not testimonial for purposes of the Sixth Amendment. And so it's in conformity with Crawford? Why shouldn't we accept that? Or it's not contrary to the Supreme Court's decision in Crawford? Well, the district court alone never even addressed the Crawford issue. It relates strictly to Namit and Douglas, which is a completely different theory. But the New Jersey Supreme Court did. Correct. Because that's what a petitioner had raised in the state courts. And it only became an issue when we appeared in the district court on habeas. Well, why is it testimonial, though? I mean, what Lombardino did is testify, actually presented no testimony, and walked out of the courtroom and then made signals to Cagno while Cagno was in the courtroom, smiled, thumbs up, and kept walking. Well, the Supreme Court has said... How is that testimonial? It's not testimonial because testimonial is defined as someone who bears testimony. It's solemn declaration to prove a fact. So you like that ruling from the New Jersey Supreme Court, right? Yes. Right. But your problem is you don't like the fact that the district court said, hey, this case seems to look a whole lot like Douglas. Now, would you concede that this case doesn't, indeed, look a whole lot like Douglas? No, it doesn't, Your Honor, because Douglas is a case where there's a co-defendant who invokes his privilege against self-incrimination, the Fifth Amendment privilege, in front of the jury, and then the prosecutor reads the co-defendant's statement, which directly tells the state's theory on why this defendant is guilty. This evidence was offered for a completely different purpose. Not to prove the defendant's guilt, but to show that the two... When you say it wasn't offered to prove the defendant's guilt, it was offered precisely to prove his guilt. It was a charged-over act. I mean, I don't see how you can say it wasn't offered to prove his guilt. They put the officer and the FBI agent on the stand to talk about Lombardino's behavior in the courtroom exactly so that it would support an over-the-act that would allow for the little Rico conspiracy to be found, right? Well, it was offered primarily to show that the... and as the jury was instructed, to show that it was continuing into the limitations period for statute of limitations purposes. So that's done the substantive crime. It was offered to prove the ongoing conspiracy. Yeah, but this is not a substantive Rico offense. Well, even if it's a conspiracy and not a Rico offense, the point is it was offered to prove the guilt, the criminal guilt on the charged offense, the little Rico conspiracy, correct? It was offered to show, yes, to prove it was one of the over-acts, but the jury was instructed that the state... It was offered to prove Lombardino was not going to rat out a member of the Maid Mafia. Correct. It was an over-act. Well, it was an... I'm sorry, the over-act need not be proven... it's not necessary for the state to produce, you know, to prove the over-act. It was introduced for a different purpose as the jury was instructed. It is part, of course, of this type of conspiracy that you are not to rat out members of the conspiracy, that you will not testify against members of the conspiracy. Well, that is one of the purposes upon which the conspiracy exists. Isn't that exactly what happened in the courtroom on that occasion? Well, it was offered to show that it was offered for statute of limitation purposes, not to prove his guilt of a Rico conspiracy. Are you suggesting that under New Jersey law, it's not the case that the state has the burden to show the statute of limitations element? I might be... I don't pretend to be deeply knowledgeable about New Jersey state law, but I thought it was actually not even disputed that the state had the burden to show that the crime was committed within the statute of limitations, and that that, under New Jersey law, is treated as an element of the offense. Well, it is treated as an element, but the statute of limitations is defined as a non-material element, and material goes towards the guilt. Non-material, like jurisdiction, it only becomes an element if it's at issue. Kodak was asked questions about the nature of the questions that Lombardino refused to testify. Why doesn't that make it testimonial? If somebody says I refuse to answer, isn't that testifying? No, it's not, Your Honor. It's simply an act. It's an act of, I'm not going to, like I said, I'm not going to testify. It's not a statement. It's not a statement which someone believes is going to be used at a later trial. It's from an objective, reasonable person's standpoint. It's just not something to prove a fact. Well, wait, when you say this, I'm really struggling with that. When you say it's not something to prove a fact, you offered it to prove a fact. The state offered it to prove there's an ongoing conspiracy. Look at how these people are behaving. This is behavior which communicates, and what it communicates is we're still in this together. I got your back. I'm not going to rat you out. That was the explicit purpose for which it was offered and the explicit argument that was made by the state. So I'm very puzzled. I'm just having a hard time getting my head around the assertion that it wasn't being offered to prove guilt. I mean, it was the closing argument. Look at how this behavior in the courtroom tells you they're still in a conspiracy. What does it mean if it doesn't mean in closing, in summation, look at this. Now you can find him guilty that you're offering it substantively to prove guilt. Well, if you look at the Douglas cases, it talks about how there has to be some substance. There has to be some substantive testimony upon which there is no cross-examination. And there's no substantive testimony here. When he gives the thumbs up and the winks and the nods, as Crawford and his progeny suggest, that's more like a casual remark. It's more like it falls within the co-conspirator hearsay exception. That might be true. Well, that must be true. But when Kodak is asked specific questions about, was he asked about the relationship within the structure of La Cosa Nostra? Was he asked questions with respect to Randazzo's murder? To me, then, the refusal to answer is just as much testimonial as answering the question. Well, no, Your Honor, because of those. I guess what I'm asking, I'm sorry, what I'm asking, isn't there a distinction between what he gestured and did when he got off the stand as opposed to what he said while he was on the stand? Well, there's two components. There's the refusal to testify, as I said before, is not a statement. And then there's the gestures, the winks, the nods, the nonverbal acts. Those were, first of all, they were made to the defendant himself, so it should fall within the co-conspirator hearsay, which under Giles, the U.S. Supreme Court has said, doesn't fall within Crawford. The evidence was offered to prove that there was a code of silence and that it continued within the conspiracy and that, indeed, the conspiracy has continued. Correct. And that was the purpose upon which it was offered for, to satisfy, because the state had the burden to prove, and this is true under Smith v. United States, once it's at issue, it's the state's burden to prove the limitations. It's an element of your case, right? Well, as I said before, it's a misnomer. It's not element in terms of going towards guilt. Well, it's an element in the sense that if you don't prove it under state law, you lose. Correct. Got it. And it is a fact determination that has to be made by a jury. Okay. We'll get you back. Okay.  Mr. McHale. Good morning, Your Honors. James K. Smith, Jr., Assistant Deputy Public Offender. I said Mr. McHale. It's Mr. Smith. That's correct. My apologies. Mr. Smith, go ahead. No problem. Appearing on behalf of Aurelio Ray Cagno. Your Honors, my first two points, I think, are somewhat related. First point, of course, is that the state failed to prove that the conspiracy continued into the statute of limitations, period. And, in fact, in New Jersey, as Your Honors have noted, the statute of limitations is an element of the crime. The state Supreme Court even described it as an essential element, and the state has conceded that it is an element. Mr. Smith, why don't you start with, if you would, how, if at all, the Douglas argument was raised and preserved in the state courts. Well, first of all, it was in both our appellate division brief and our reply brief. Never put before the state Supreme Court, though, was it? Yes, it was. Where is it cited? Where is it cited in that Supreme Court briefing? Just in the dissent. But the issue, the question you asked me was, was it before the state Supreme Court? And under New Jersey procedure, the way that it works is that all of the appellate division briefs, and as I just said, that we cited Douglas and them in our appellate division briefs. Those are forwarded to the state Supreme Court. And then you file what is called a supplemental brief in which you may add further arguments. So that was before the state Supreme Court, and it was argued in Justice Albin's dissent. The fact that the majority of the state Supreme Court did not cite it does not mean that it wasn't raised before them. It does perhaps show that the decision of the New Jersey Supreme Court is unreasonable. So you acknowledge that in the briefing that you filed, that is the, you call it supplemental briefing, but the briefs that you created for the, you meaning for the client, not maybe you specifically, for the New Jersey State Supreme Court didn't make an argument based on Douglas. Is that right? Not the supplemental brief did. The appellate division briefs, which they had, did cite the Douglas and them in cases, yes. Okay. And you just, given some helpful instruction or information about New Jersey state law, is part of the problem here that the district court addressed things that might be considered to be aspects of state law and not federal law? No. Our first point is, of course, a straight out of Jackson versus Virginia, that the state failed to prove any evidence whatsoever on the statute of limitations element. And the statute of limitations date. Let me suggest to you, I think this is actually out of one of your filings in the state court. There's a specific argument that, quote, under New Jersey law, the statute of limitations were raised as an element of the crime, unquote, and that's what you've argued here. Right. So if you're going to be talking about what is and isn't a matter of New Jersey state law and, therefore, something uniquely within the province of the New Jersey Supreme Court to opine on, why would we be reviewing that under AEDPA? Well, actually, I believe it's in Coleman versus Johnson, the quote that I had in one of my briefs before this court. But once a state defines something as an element of the crime, then, of course, the due process clause kicks in and the state has the burden of proving that element beyond a reasonable doubt. So that is my federal constitutional argument. They've defined the statute of limitations as an element of the crime, and they presented zero proof to support it, that the New Jersey Supreme Court. Can I make a comment about whether, in fact, the statute of limitations had not expired, that, in fact, crimes were committed within the statute of limitations? Well, actually, no. What happened in this case was that the New Jersey State Supreme Court said that the statute of limitations date was January 2nd of 1998. There was no evidence that anyone in the conspiracy or the defendant or anybody in the Colombo crime family had done anything at all after January 20th of 1994. How did the New Jersey State Supreme Court come to the conclusion about that critical date? Well, what they said in their opinion was that the state was not, and I'm quoting from the opinion, the state was not obligated to present direct evidence of an overt act that took place at a date later than January 20th of 1994. Of course, I would concede that the state doesn't have to prove an overt act. It just has to prove something to show that the conspiracy was viable. Let me interrupt you for a minute. It's not that statement by the New Jersey Supreme Court. It's an assessment by that court under New Jersey State law of how the New Jersey State statute of limitations operates and what that in turn requires in the way of proof in a New Jersey prosecution under New Jersey's Little Rico statute. It sounds like what you just read is the New Jersey Supreme Court opining about New Jersey law. And if that's true, why is that something that we should be reviewing under AEDPA? Because, in fact, they did go on to say, well, we don't have any evidence that anything happened after January 20th of 1994. But what they said was there was expert testimony that once an individual becomes a member of La Cosa Nostra, he's a member for life, and this was a structured organization. It was longstanding. There had been members that had been members for 40 years. And what it said in the opinion, and again I'm going to quote, was all of that permitted the jury to infer that the enterprise was an ongoing entity and did not disappear from existence after January 20th of 1994. So what they are saying is that the state met the statute of limitations element and they did it by showing stuff that happened prior to January 20th of 1994. Their argument is basically that because the conspiracy was viable up until January of 1994, it must have also been viable after January 2nd of 1998. So our position, which is the same position that Judge Thompson found, was this is objectively unreasonable, that this is not an inference. It is an unsupported assumption. As Judge Thompson said, it would be objectively unreasonable to say that the existence of an element of the crime could be proven beyond a reasonable doubt in the absence of any evidence of the existence of that evidence. Does the Second Circuit's Yanadi decision bear on this whole statute of limitations question in some meaningful way? That's exactly where the New Jersey Supreme Court went wrong. They defined the statute of limitations as an element of the crime. Then they got all of this federal evidence where the statute of limitations is an affirmative defense. When you say they got it wrong, don't we sort of have to defer to what they think the New Jersey law is? If they choose to say we're going to look to federal law because the statutes are similar, Little Rico is based on the Federal Rico statute, we're going to adopt that approach to statute of limitations in our state law. Who are we to say that they got it wrong? I may frustrate advocates, but who are the three of us to say, hey, you don't know your own law, New Jersey? Well, I think this is the same as basically any other situation. If they define something as an element, I mean, if you have, for example, they say armed robbery with a weapon is a first-degree crime, but you don't have to really prove that the guy had a weapon, well, then that's a constitutional violation. And that's basically what happened here. They are continuing to say that it is an element of the crime, but they're saying, well, there wasn't any proof here. Well, that's a constitutional violation. How did Judge Thompson treat Rocco's testimony or the testimony concerning Rocco's conduct in that second trial, the testimony of the sheriff's officer and the government official? You mean Lombardino, Your Honor? Yes. Yes, I'm sorry. Lombardino on that point as well. She found that was a violation of Douglas v. Alabama, which it clearly was. The question was raised at Mr. Yomtov, was this testimonial? But did she consider the idea that that was not testimonial, so it was not a violation of Douglas? Well, in Douglas, of course, it doesn't matter whether it's testimonial or not. The problem there, of course, is drawing inferences just from a refusal to testify. In Douglas, of course, the defendant didn't testify at all. Supposing we were to conclude, just supposing we were to conclude that it wasn't testimonial, how would that affect your case? Then I would win under Douglas and lose under Crawford, but I'm raising both of them. So from my position, I would either way. Well, what about the testimony concerning the gestures and nods and winks? I never said that was testimonial. I didn't argue that in the State Court. I didn't argue it in this. I guess the essence of your claim was that you didn't have an opportunity to cross-examine Lombardino. Absolutely. It's a confrontation claim. But doesn't that necessarily mean that you have to make the pitch that what happened was testimonial? No, because in Douglas- Douglas comes decades before Crawford. Are you suggesting that Douglas somehow stands above and beyond and independent of Crawford and Crawford doesn't affect Douglas at all? I'm saying that the Supreme Court and, for that matter, this Court, as I understand, has recognized that Douglas v. Alabama is clearly established federal law. So, yes, I can win under either Crawford or Douglas. Until they reverse Douglas, it's still good law. So if the testimony had simply been that Lombardino took the witness stand at a prior proceeding and after he got off the stand nodded and gave thumbs up and said hang in there, that wouldn't have been a problem? That's correct. I wouldn't have had a constitutional argument. I'd like to make clear also that the testimony that was introduced was not just that Lombardino refused to testify. It was testimony that, when asked, he refused to testify, quote, relative to his knowledge of the murder of James William Dazzo, and, quote, relative to his knowledge of the Colombo crime family. And based upon that, of course, the State argued that he was upholding the oath of emerita, that this was proof of two overt acts, it was proof of the ongoing nature of the conspiracy, and it was used to conceal the involvement of Mr. Cagno in the Randazzo murder. I would also say that if I understand you correctly, you were saying it doesn't matter whether you can examine Lombardino or not. That's not the strength of your point. You could still win on points one and three. Is that correct? Well, three is Lombardino. I could still win on points one and two, but, you know. Three is a confrontation claim. Right. Yes. But you're saying your rights of confrontation were impeded. You didn't have a chance to examine him. Exactly. Is that right? Yes. But then we go back to that same point again. That was not testimonial. And under Douglas v. Alabama, it's the refusal to testify, which triggers the constitutional violation. In Douglas v. Alabama, the witness got on the stand, he was asked all sorts of questions, and he answered, I refuse to testify to every single one. In my remaining minute and a half, if I could, I'd like to talk about the burden of proof on the statute of limitations argument. The instruction here, of course, was the conspiracy is a continuing course of conduct which will only terminate blah, blah, blah, blah, blah. And then it says that the defendant has to abandon it. Now, the state, in its briefs, has made what I view as two major concessions. First of all, they have said in, I think, four points by my count, that this instruction did, in fact, create a presumption. At one point they say, well, it was a rebuttable presumption, not a mandatory presumption, but that doesn't matter if, in fact, the effect of the presumption is to still lessen its burden. Is this still a question of state law? Is this a question of how the party who's trying to make the statute of limitations point that you're making is to be dealt with, a question uniquely within the province of the state Supreme Court? No, it's straight out of Patterson v. New York and Sandstrom v. Montana and Corrella v. California. It's the same principle in all of those cases. And finally, I would say this exact argument was made in Yanadi and rejected, right? The argument you're making here about burden shifting? Well, of course, because in Yanadi, it's the federal statute, which is an affirmative defense, and just by its very nature, an affirmative defense shifts the burden of proof. Right. And the state of New Jersey, through its Supreme Court, has said we embrace Yanadi's approach to this. And it's your view they can't do that? Not as long as they're still saying it's an element of the crime. Thank you, Your Honor. Mr. Smith, thank you very much. Mr. Youngtown? Just real brief. First of all, if the court desires and treats this as unexhausted, there is a mechanism in which this court can direct certification back to the New Jersey Supreme Court on the Manet-Douglas issue that never really was fairly presented in the state court. Because as Your Honor pointed out, we prefer to have the state Supreme Court deal with this issue in the context of state law addressing our statute of limitations. Can you respond to Mr. Smith's point, which is the state Supreme Court did have Douglas in front of it. Under New Jersey procedure, the briefs below are sent up, and what's submitted to the New Jersey Supreme Court isn't a whole new round of briefing. It's supplemental only to what's been presented below. And they had it, and they reviewed it, and in fact, one of the justices commented on it. So how can you say it's not preserved? To be quite candid, Your Honor, counsel has bifurcated this into a Crawford-Douglas-Manet violation. It was never presented as such in the state courts. Just stick with me on responding to his specific procedural comment. I'm just curious to know whether you think it's accurate or inaccurate. He said to us, as a matter of New Jersey practice, the briefing in the appellate division is submitted to the Supreme Court, and a supplement is provided. Now, is that an accurate statement? That is an accurate statement. But as I set out in my brief, you know, it was buried. These were 200-page briefs. It was buried in a footnote of his brief. It was buried in a parenthetical. It was never squarely presented to the state courts. Not buried so much that it didn't show up in the dissent, right? It showed up in a reference to refusal to testify under Justice Albin's dissent where he cited a parenthetical to Manet and didn't even discuss Douglas. And as Your Honor, keep in mind, as Your Honor pointed out, this is ADPA. We're not looking at whether the New Jersey Supreme Court was incorrect or errored in its analysis. We have to find that it was unreasonable. And in terms of this, it wasn't unreasonable. Lombardino was not acting as a witness. He was not testifying. It was not a substitute for trial testimony, and it wasn't even a statement made to law enforcement. So under Crawford, Davis, Bryant, and Clark, it completely does not fall within the Crawford paradigm. And if I might add, if the government wins on ground three, there's no reason for this court to even reach ground one because. . . Why don't you also, if you would, address Mr. Smith's argument that Douglas stands independent of Crawford, that even if one were, no matter how one views this, whether it's testimonial, not testimonial, it doesn't matter because Douglas says what it says, and this is like Douglas. If you look at the courts that have interpreted Douglas and Mamet, it's the situation where the witness appears in front of the jury and invokes their Fifth Amendment privilege. Lombardino never resolved in front of the jury. No, but you have Kodak and the other agent testifying that that's what he did. But that was part of the analysis in establishing undue prejudice. They never learned that he exercised the Fifth Amendment right. And it wasn't heavily fact-intensive. It didn't include an extensive narrative of this. Who cares what the length of it is if the problem is that there's testimony that this person did something. You can draw inferences about what happened here because he gave communications both by word and behavior. Communicative behavior took place. And never mind the fact that you can't confront this guy and you can't cross-examine him, defendant. The jury ought to hear this and draw inferences. How do you get around saying, don't worry about that, that wasn't really offered for that, at the same time that you indeed are offering it and relying on it? In terms of Namik and Douglas, the problem is the improper inference. There was no improper inference here because Lombardino had immunity. And the jury knew this. When you have immunity, the privilege against self-incrimination no longer attaches. I think we have just... I'm not sure I understand that argument at all. The problem identified in Douglas is the defendant can't cross-examine somebody who refuses to take the stand and testify. That's what happened here. And nevertheless, the state offered into evidence in front of the jury testimony about Lombardino's communications with the defendant. Yeah, but when you look at the cases that have interpreted that, Douglas and Namik, they look at the nature, the substance of the testimony. It tells the narrative, the complete narrative, that this defendant committed this particular crime, such as, in this case, the murder. Such as, in this case, an ongoing conspiracy. Well, this case is different. This is a RICO conspiracy. We only need to show that he agreed to participate in this particular enterprise and further that conspiracy. We didn't need to show predicate acts. All we needed to show was at the inception that he expressed loyalty, and part of that loyalty was, I'm not going to reveal the activities of my other members. That's what we needed to prove. We didn't need to prove predicate acts. And we established that through the overt acts as well as attempting to prove, as part of our burden, to show that these acts were committed within the limitations. Thank you very much for your argument, and thank you as well, Mr. Smith. We'll take the case under advisory.